IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ASTEC AMERICA, INC., <br> Plaintiff, <br> <br> v. <br> <br> POWER-ONE, INC., and <br> DOES 1 through 10, <br> Defendants. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION NO. 6:07-cv-464 |

## MEMORANDUM OPINION AND ORDER

Before the Court are Power-One, Inc.'s Motion to Dismiss or in the Alternative, Motion for More Definite Statement (Doc. No. 41), Astec America, Inc.'s Opposition (Doc. No. 49), Power-One's Reply (Doc. No. 50), and Astec's Surreply (Doc. No. 51). For the reasons stated herein, Power-One's Motion to Dismiss or in the Alternative, Motion for More Definite Statement is hereby DENIED in its entirety.

### I. BACKGROUND

Astec and Power-One are competitors in the ac-dc and dc-dc power supply industry. On September 30, 2005, Power-One initiated legal action by filing a patent infringement suit against Artesyn Technologies, Inc. in this district, alleging infringing of four Power-One patents, U.S. Patents Nos. 6,936,999 ("the '999 patent"), 7,000,125 ("the '125 patent"), 6,949,916 ("the '916 patent"), and 7,049,798 ("the '798 patent"). *Power-One, Inc. v. Artesyn Technologies, Inc.*, Case No. 2:05-cv-463 (hereinafter referred to as "*Artesyn Case*"). The accused product in the *Artesyn Case* was Artesyn's DPL20C, a dc-dc power converter. Seven months into the *Artesyn Case*, Emerson Electric Co., the parent of Astec, purchased Artesyn Technologies. Astec designs its own set of dc-dc power converters, and the two at issue in this case are the Atlas product and the Batoka

product.

On April 16, 2007, at the request of this Court to streamline the *Artesyn Case* for trial, Power-One decided not to assert two of the four patents contained in its complaint, the '916 patent and the '798 patent. Although they were withdrawn from trial, Power-One declined to dismiss the claims associated with the two patents with prejudice. *See* Transcript of July 30, 2007 Pretrial Hearing, *Artesyn Case*, at 113:2-13 (Ex. C of Doc. No. 49).

Meanwhile, Power-One learned of the two Astec products, and sought to introduce them into the *Artesyn Case*. Power-One requested discovery of Astec's products, and argued at a June 25, 2007 discovery motion hearing that it was entitled to information regarding the Atlas and Batoka products because they could potentially infringe Power-One's patents. Power-One moved to join both Astec and Emerson as parties to the *Artesyn Case* on July 24, 2007. The Court denied the motion and held that Power-One could effectively join and litigate its claims against Astec and Emerson in the declaratory judgment action that Astec had already filed. *See* below & Doc. No. 316 of the *Artesyn Case*. Power-One also moved to amend its infringement contentions to include the Atlas product on August 24, 2007. The parties thereafter proceeded to trial with the understanding that only claims and defenses arising out of the two asserted patents, the '999 and '125, would be presented to the jury in November of 2007. The two patents that were not asserted in the November 2007 trial, the '916 and '798 patents, are currently scheduled for a jury trial date of November 10, 2008 in the *Artesyn Case*.

During this time, Astec filed this declaratory judgment action on July 27, 2007, in the Central District of California. Astec seeks declaratory relief of non-infringement for both the Atlas and

Batoka products, a declaration of invalidity for each of Power-One's patents at issue in the *Artesyn Case*, the '999, '125, '916, and '798 patents, and a finding that Power-One falsely marked its products. Power-One moved to dismiss the case, or in the alternative to transfer the case to this district due to this Court's familiarity with Power-One's patents. The California court granted Power-One alternative motion to transfer to this district, wherein Power-One subsequently filed a renewed Motion to Dismiss or in the Alternative, Motion for More Definite Statement, which is currently before the Court.

## II.  LEGAL STANDARD

A.    Subject Matter Jurisdiction

A district court's federal question jurisdiction is limited to cases arising under the Constitution, a federal law, or a treaty. 28 U.S.C. § 1331. However, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994); *accord Strain v. Harrelson Rubber Co.,* 742 F.2d 888, 889 (5th Cir. 1984). "Ordinarily, where a jurisdiction issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). In such cases, the district court may dismiss a plaintiff's claim based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Clark v. Tarrant County, Texas,* 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied,* 454

U.S. 897, 102 S. Ct. 396, 70 L. Ed. 2d 212 (1981)).

The Declaratory Judgment Act grants subject matter jurisdiction "[i]n a case of actual controversy." 28 U.S.C. § 2201(a). The Supreme Court recently reexamined the "actual controversy" requirement of the Declaratory Judgment Act in the context of a patent case. *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764 (2007). The Supreme Court held the Federal Circuit's "reasonable apprehension of suit" test to be inconsistent with the Court's prior holdings. Instead, the Court declared that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 771. The Court also provided guidance in stating that cases and controversies that are justiciable under Article III of the United States Constitution are similarly justiciable under the "actual controversy" requirement of the Declaratory Judgment Act. *Id.*

Post-*MedImmune,* the Federal Circuit has held that Article III jurisdiction is satisfied "where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *Sandisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1381 (Fed. Cir. 2007). The outer boundaries of declaratory judgment jurisdiction have not been crystalized, but the Federal Circuit has provided the following guidance:

> We hold only that where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without a license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights.

*Id.* On the other hand, jurisdiction generally "will not arise merely on the basis that a party learns

of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.* Without a proper case or controversy, any judgment rendered would effectively be "an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007).

B.     Failure to State a Claim

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate where a party fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, a court construes the complaint in favor of the plaintiff and takes all pleaded facts as true, no matter how improbable those facts. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed. 2d 338 (1989); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 204 (5th Cir.2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965. However, "in order to avoid dismissal for failure to state a claim . . . a plaintiff must plead specific facts, not mere conclusory allegations." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). A court "will thus not accept as true conclusory allegations or unwarranted deductions of fact." *Id.*

### III. DISCUSSION

Power-One moves to dismiss three claims of Astec's Complaint. For the first claim, Declaratory Judgment of Non-infringement, Power-One moves to dismiss Astec's claim of non-

infringement with respect to the Atlas product and the Batoka product. Power-One brings its Motion to Dismiss the first claim pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the second claim, Declaratory Judgment of Invalidity, Power-One moves to dismiss with respect to two out of the four patents at issue, the '916 patent and the '798 patent. Power-One brings its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the third claim, False Marking, Power-One brings its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

A.      Case or Controversy

Power-One's central argument for dismissal of Astec's first two claims is a lack of a case or controversy that would provide for subject matter jurisdiction over these two claims. Power-One contends that no case or controversy exists because Astec has failed to identify "ongoing or planned activity" on the part of Power-One that is of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment," and that any dispute that existed at the relevant time was not sufficiently "definite and concrete, touching the legal relations of parties having adverse legal interests." MOT. AT 7 & REPLY AT 3 (quoting *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007)).

Power-One maintains that the relevant time for determination of subject matter jurisdiction is the point at which Astec's Complaint was filed, which occurred on July 27, 2007. MOT. AT 11 (citing *Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994) ("Subject matter jurisdiction is determined at the time that the complaint is filed.")).[1] At that point in time, Power-

---

[1] We note that although the Court will determine subject matter jurisdiction at the time the original Complaint was filed, if the case were to be dismissed, for all practical purposes, Astec could immediately re-file its complaint with additional support that Power-One more clearly alleged acts of infringement after the original Complaint was filed. It has also been demonstrated that even if the parties were to file this case in a distant forum, the facts and circumstances are so related to the *Artesyn Case* that transfer to this Court will likely occur.

One contends that it did not charge Astec with committing acts of infringement and therefore did not create an actual case or controversy between the parties.

Though not clearly stated, Power-One's argument appears to advocate a legal standard that would require a patentee to allege that its patents have been infringed before a justiciable controversy may arise. SEE MOT. AT 7 ("Under the *MedImmune* test, referenced above, a declaratory judgment plaintiff is required to show an actual and imminent injury caused by the defendant that can be redressed by judicial relief, and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"); SEE MOT. AT 8 ("First, Power-One has not charged Astec with committing acts of infringement related to the Atlas."); SEE ALSO MOT. AT 10 & N.3 ("Astec cannot show that it has a justifiable controversy with respect to the Batoka products. Unlike the Atlas, Power-One has never accused the Batoka products of infringement. . . . Power-One has never submitted infringement contentions for the Batoka product in the Previous Action."). Power-One accurately quotes the legal standards enunciated in *MedImmune*, *Sandisk*, *Sony*, and *Teva Pharm*. But Power-One's application of these standards and its corresponding argument are not consistent with this Court's understanding of the principles declared in *MedImmune* and its progeny.

It is accurate to state that the mere existence of a patent is not sufficient to establish a case or controversy without "some affirmative act by the patentee," *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380-81 (Fed. Cir. 2007); however, there is no requirement that the patentee threaten an infringement action before an actual controversy arises. *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1284-85 ("As a result, our post-*MedImmune* decisions, while not attempting to define the outer boundaries of declaratory judgment jurisdiction, have made clear that a declaratory judgment plaintiff does not need to establish a reasonable

7

apprehension of a lawsuit in order to establish that there is an actual controversy between the parties. . . . Indeed, as we have previously acknowledged, the Declaratory Judgment Act was intended to fix the problem that arises when the other side does not sue."). Similarly, it is accurate to state that there must be a substantial controversy of sufficient immediacy and reality, but there is no requirement that a declaratory judgment plaintiff expose himself to an actual and imminent injury before he may seek relief:

> Likewise, in *Steffel v. Thompson*, 415 U.S. 452, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974), we did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution. . . . The rule that a plaintiff must destroy a large building, bet the farm, or (as here) risk treble damages and the loss of 80 percent of its business, before seeking a declaration of its actively contested legal rights finds no support in Article III.

*MedImmune v. Genentech, Inc.*, 127 S. Ct. 764, 772-75 (2007). Furthermore, even a patentee's promise not to sue will not nullify an actual controversy if certain acts have already been committed. *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1382-83 (Fed. Cir. 2007) ("We decline to hold that Jorgenson's statement that ST would not sue SanDisk eliminates the justiciable controversy created by ST's actions, because ST has engaged in a course of conduct that shows a preparedness and willingness to enforce its patent rights despite Jorgenson's statement.").

Power-One's position for what constitutes a case or controversy therefore finds no support in the applicable caselaw. The Court declines to inject the requirement that a patentee must charge a declaratory judgment plaintiff with infringement before an actual controversy becomes ready for adjudication. The Court now turns to whether a substantial controversy of sufficient immediacy and reality existed over the Atlas and Batoka products and the two patents that were not asserted in the *Artesyn Case*.

B.   The Atlas Product

1.   Subject matter jurisdiction

Power-One maintains that no controversy existed over whether the Atlas product infringed its patents. Power-One rationalizes that at the time of the Complaint's filing, July 27, 2007, Power-One did not accuse the Atlas product of infringement. While true that Power-One did not amend its infringement contentions to formally accuse the Atlas product of infringement until after Astec filed its Complaint, Power-One's statements at the June 25, 2007 discovery hearing indicate that a substantial controversy revolved around the Atlas product, and whether its potential infringement should give rise to further discovery:

Mr. Katz:   . . . And fundamentally, while of course Artesyn does dispute that there has been infringement, maybe the noncontroversial way to say this is we're looking for discovery about Artesyn's acts that Power-One believes are infringement. And I don't think Artesyn can dispute that, and the key is we're entitled to that.

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 3:11-16 (Ex. L to Doc. No. 49).

Mr. Deaver:   . . . if Power-One accuses the Atlas device of infringement, that will be a sea change in what they have contended a point of load device is.
Mr. Katz:   Well, I think I just need to respond to that. Obviously, we're not debating that here, but just so you have full information, I think this is a continuation of the DPL15E. . . . If it is the continuation of the 15E, it's a POL. By definition it's a POL. It's not a sea change.
The Court:   What makes you think it is?
Mr. Katz:   Because the dates all seem to line up, Your Honor. It's a Zilker chip, a PMBus compliant Zilker chip. How many products were they making with a PMBus compliant Zilker chip? So this has to be the 15E project.

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 36:1-23 (Ex. O to Doc. No. 49).

Mr. Katz:   What we would like is complete discovery of the DPL15E project as it existed in late 2005 and 2006 in Ireland and any imports, use and testing, the use of the Zilker PMBus enabled Zilker chip in any other Artesyn product and now we believe that would be the Atlas project . . . So we've got three new projects, what we'll call the Ireland DPL15E, the Atlas and the Venus. . . . But the fact is that if we get a box of paper in a week and it's not sufficient to prove infringement, who bears the burden, whose fault is that what's the ramification of that?

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 47:3-19 (Ex. P to Doc. No. 49).

Mr. Katz: . . . This modified board they plugged the Zilker in to is what I would call the new DPL15E and would be the prototype for the Atlas. . . .

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 42:14-16 (Ex. Q to Doc. No. 49).

The Court: So what is it that you believe that connects the dots here between your patent and the 15E?
Mr. Katz Right. The fundamental connection, Your Honor, is that the 15 – DPL15E – DPL is short, was collapsed from DPOL. DPOL stand for digital POL. So the DPL products are digital POLs. . . . The DPL15E is a digital POL that uses a Zilker chip to provide PMBus capability, so it's a PMBus compliant digital POL. Now, it is different from the DPL20C. The main difference is the DPL20C, Your Honor, used what's called . . . an analog power train. The DPLE15E [sic] uses a digital power train.

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 11:8-22 (Ex. R to Doc. No. 49).

At the June 25, 2007 hearing, Power-One clearly sought discovery of information for the Atlas product. Moreover, even without a direct accusation of infringement, Power-One's statements foster the notion that the Atlas product could infringe Power-One's patents if more information were made available. Specifically, the statements show that Power-One believed the Atlas device was a continuation of the DPL15E, and that both of these devices could potentially infringe Power-One's patents as a digital version of a POL.

Pursuant to Fed. R. Civ. P. 26(b), the scope of discovery is provided as any nonprivileged matter that is relevant to any party's claim or defense. Discoverable information concerning the Atlas device therefore must be relevant to a claim or defense concerning the Atlas device. Although Power-One may not have been certain whether the Atlas device infringed its patents at the time, it purposefully sought discovery in an attempt to show that the Atlas device could be accused of infringement. Furthermore, Artesyn disputed whether such discovery was appropriate. Such a discovery dispute represents a significant controversy in itself, and required a determination of the Atlas product's likelihood of infringement.

Other courts have also recognized, "[a] history of patent litigation between the parties can provide a jurisdictional basis under certain circumstances." *Vutek, Inc. v. Leggett & Platt, Inc.*, 2008 WL 495648, at *2 (E.D. Mo. Feb. 20, 2008) (citing *Kos Pharm. v. Barr Lab., Inc.*, 242 F. Supp. 2d 311, 315 (S.D.N.Y. 2003)). Both Power-One and Astec were involved in the *Artesyn Case*, particularly after Power-One moved to join both Astec and its parent company, Emerson, as parties to the *Artesyn Case* on July 24, 2007. *See Artesyn Case*, Doc. No. 256. Accordingly, the parties' dispute over discovery of the Atlas product represents a substantial controversy of sufficient immediacy and reality to provide subject matter jurisdiction for Astec's declaratory judgment claim of non-infringement for the Atlas product.

2.   Failure to state a claim

Power-One also moves to dismiss Astec's declaratory judgment claim of non-infringement for the Atlas device for failure to state a claim upon which relief may be granted. In the alternative, Power-One moves for a more definite statement. Power-One argues that Astec's Complaint[2] must set forth each specific past act for which it seeks clearance before Power-One can appropriately respond to the Complaint. MOT. AT 16. More specifically, Power-One argues that Astec must "itself acknowledge that it has in fact engaged in or is planning to engage in activities that could constitute infringement," and that "[d]e minimis acts, such as a single demonstration where an unknown party 'applied power' to a device, are insufficient to demonstrate a true case or controversy between the parties as is required for a declaratory judgment action." MOT. AT 8-9.

Power-One's position is untenable. In effect, it is asking the Court to ensure that Astec's

---

[2] Astec's claim for non-infringement states, in relevant part, "[s]pecifically, Power-One has charged Astec with committing acts of infringement of the Patents-at-Issue by Astec's activities related to: (i) a family of custom dc-dc converters known within Astec collectively as "Batoka" and (ii) a dc-dc converter known within Astec as "Atlas."

claim for relief is not *de minimis*, which according to Power-One would include litigation over a product that was never sold or offered for sale, but was simply "powered on" as a demonstration of its features. Nonetheless, what Power-One describes as *de minimis* is identical to the facts and circumstances surrounding the *Artesyn Case* that Power-One found important enough to fully litigate and try to a jury. The Artesyn device, the DPL20C, similarly was never sold, was only demonstrated, and as a result, the parties stipulated to a nominal damages figure of $100. Power-One cannot on the one hand maintain its position that Astec has failed to state a claim if it cannot identify sales of the Atlas product, while on the other hand fully litigate a case with essentially an identical set of facts.

Furthermore, at this early stage of the proceedings, a complaint need only satisfy the requirements of notice pleading. *See* Fed. R. Civ. P. 8(a); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512-14 (2002). However, substantive development of a patent case in this district receives appropriate attention soon enough, as the Local Patent Rules and discovery rules are designed to facilitate an efficient and effective exchange of the parties' claims and defenses. *See O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1365-66 (Fed. Cir. 2006) ("discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense. . . . The local patent rules in the Northern District of California [which are similar to those in this district] are designed to address this problem by requiring both the plaintiff and defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery.").

Astec's declaratory judgment claim of non-infringement for the Atlas product has therefore

been sufficiently pled. For the reasons stated above, Power-One's Motion to Dismiss Astec's claim of Declaratory Judgment of Non-Infringement for the Atlas product is hereby DENIED. Power-One's Alternative Motion for a More Definite Statement for the Atlas product is also hereby DENIED.

B.      The Batoka Product

Power-One also maintains that no controversy existed over whether the Batoka product infringed its patents. Power-One similarly rationalizes that it never accused the Batoka product of infringement and never sought to amend its infringement contentions to include the Batoka product. Despite there being a lack of formal accusations, Astec was not the only party concerned about possible infringement charges relating to the Batoka product. One of Astec's customers for the Batoka product, Sun Microsystems, Inc., was apparently similarly concerned, and sought from Power-One a covenant not to sue:

Mr. Katz:     As a threshold issue just to address a point he raised, there is evidence that this stuff came from Sun. It's Exhibits A and B to our reply brief. It's – there's an email from a Sun employee clearly showing their interest in getting a covenant not to sue and there's a draft covenant, so it's Exhibits A and B to our reply on this issue.

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 61:6-11 (Ex. G of Doc. No. 49).

Power-One did not agree to a covenant not to sue. Instead, it sought discovery of information regarding the Batoka device, and in doing so, raised concerns about whether the Batoka products could be the target of an infringement action:

Mr. Katz:     . . . So basically there is a serial bus based DC to DC converter that Artesyn has designed for Sun, has sent prototypes to Sun, selling [to] Sun commercially, we have no idea. But the key is that it appears it at least has a serial bus for monitoring communication and control. I can only guess that they would likely put the PMBus on there but there was [a] representation earlier in chambers that it's not a PMBus based part.

Transcript of June 25, 2007 Hearing, *Artesyn Case*, at 51:16-24 (Ex. D of Doc. No. 49).

Power-One's statements indicating that the Batoka product could potentially infringe, in conjunction with a third party's concerns over possible infringement, represent a substantial controversy of sufficient immediacy and reality to provide subject matter jurisdiction for Astec's declaratory judgment claim of non-infringement for the Batoka product.

Power-One also moves to dismiss Astec's claim of non-infringement for the Batoka product for failure to state a claim upon which relief may be granted, and in the alternative, for a more definite statement. Astec's claim of non-infringement, however, encompasses both the Atlas and the Batoka products. The discussion above regarding notice pleading is therefore equally applicable to both the Atlas and Batoka products. For the same reasons as the Atlas product, Astec's declaratory judgment claim of non-infringement for the Batoka product has been sufficiently pled. Accordingly, Power-One's Motion to Dismiss Astec's claim of Declaratory Judgment of Non-Infringement for the Batoka product is hereby DENIED. Power-One's Alternative Motion for a More Definite Statement for the Batoka product is also hereby DENIED.

C.   The Previously Unasserted Patents

In addition to the Atlas and Batoka products discussed above, Power-One maintains that no case or controversy exists over two of the four patents at issue in this case. These two patents, the '916 patent and the '798 patent, were not asserted at the trial of the *Artesyn Case*, wherein Power-One had notified Artesyn that these two patents would not be asserted in a letter dated April 16, 2007. Power-One contends that when the parties engaged in its discovery dispute at the June 25, 2007 hearing, Power-One had already decided not to assert the '916 and '798 patents at trial, and therefore no case or controversy arose over the Astec products and the two unasserted patents.

Although these two patents were not asserted at the November 2007 trial, they nonetheless

remained active and live in Power-One's Complaint. The Court invited Power-One to dismiss the claims associated with these two patents with prejudice but Power-One declined to do so. Transcript of July 30, 2007 Pretrial Hearing, *Artesyn Case*, at 113:2-13 (Ex. C of Doc. No. 49). Power-One's attempt at seeking discovery of the Atlas and Batoka products therefore occurred while the '916 and '798 patents remained active in the case. Power-One also did not qualify its discovery motions and oral argument to limit its discovery dispute to just the two patents that were tried in November of 2007, the '999 and '125 patents. Although the '916 and '798 patents were not tried in the November 2007 trial, they are now scheduled for a trial date of November 10, 2008. Accordingly, there remains an active case or controversy over the '916 and '798 patents that are justifiably extended to the Atlas and Batoka products due to Power-One's actions in the *Artesyn Case*. Power-One's Motion to Dismiss Astec's claim of Declaratory Judgment of Invalidity for the '916 and '798 patents is hereby DENIED.[3]

D.     False Marking Claim

Power-One moves to dismiss Astec's false marking claim under 35 U.S.C. § 292 on several grounds: (1) Astec must identify in its Complaint the products that it believes are falsely marked, (2) Astec must identify in its Complaint the patents that it believes were inappropriately used to mark the products, and (3) the actual text marked on Power-One's products do not constitute false marking as a matter of law.

With respect to the first two grounds, Power-One has cited no authority requiring claims for

---

[3] It is not clear whether Power-One has moved to dismiss Astec's claim of Declaratory Judgment of Invalidity for the '999 and '125 patents. To the extent Power-One has moved to dismiss Astec's claim for these patents, the Court finds that a substantial controversy of sufficient immediacy and reality exist over these patents for the reasons stated above. Power-One's Motion, if any, to Dismiss Astec's claim of Declaratory Judgment of Invalidity for the '999 and '125 patents is also hereby DENIED.

false marking to be pled with particularity. Power-One merely cites the proposition that a claim for patent infringement ought to identify the patents at issue. MOT. AT 14 (citing *Security Dynamics Techs., Inc. v. Activcard Networks, Inc.*, 1996 WL 263648, at *3 (N.D. Cal. 1996)). A claim for false marking, however, is distinguishable from a claim for patent infringement, where the patentee plaintiff ordinarily is in possession or control of the patents at issue. A false marking plaintiff on the other hand, is not in direct control of either the products at issue or the patents marked on those products. As discussed above, discovery tools and disclosure requirements will soon provide the parties with a better understanding of the products and patents at issue. Astec's false marking claim has therefore satisfied the threshold requirements for notice pleading.

Power-One further argues that the actual language used to mark its products has been declared valid by other courts and thus cannot give rise to a false marking claim as a matter of law. Power-One's products are marked with the following language, "These products are protected by one or more of the following US patents." The label goes on to list seventeen (17) patents, including the four (4) patents at issue in this case and the *Artesyn Case*. MOT. EX. A AT 21. Though the preceding quote of Power-One's label is not recited in Astec's Complaint, Astec does not dispute Power-One's recitation of its label. Astec argues that its false marking claim is viable, however, so long as it can demonstrate that at least one of the patents listed do not cover the product in question. Astec relies on the Federal Circuit's most recent discussion of false marking claims:

> The statute supplies a civil fine for false marking of articles. According to the statute, when an unpatented article is marked with the word "patent" or any word or number that imports that the article is patented, and such marking is for the purpose of deceiving the public, the fine is invoked. When the statute refers to an "unpatented article" the statute means that the article in question is not covered by at least one claim of each patent with which the article is marked. Thus, in order to determine if an article is "unpatented" for purposes of section 292, it must be first determined

> whether the claims of a patent cover the article in question. To make that determination, the claim in question must be interpreted to ascertain its correct scope, and then it must be ascertained if the claim reads on the article in question.

*Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (internal citations omitted). Though the Federal Circuit defined the meaning of "unpatented article" for the purposes of Section 292, it did not specifically address whether a similar definition would apply if the product were labeled with the "one or more" language that Power-One uses.

Power-One maintains that this form of marking is valid as a matter of a law and provides the following case citation. *Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 WL 5268123, at *20 (E.D. Tex. Aug. 4, 2004) (Craven, Mag.) ("For example, the statute has been interpreted to permit a listing of multiple patents with a statement that the article is covered by 'one or more' of those patents, and doing so does not constitute false marking under § 292 even though fewer than all of the listed patents actually cover the article.").

Despite the favorable quote provided by Power-One, the court in *Mass. Inst. of Tech.* did not decide the scope and meaning of "unpatented article" in the context of a Section 292 false marking claim. Instead, the court grappled with the scope and meaning of "patented article" in the context of 35 U.S.C. § 287, and whether damages to the plaintiffs should be limited for an alleged failure to comply with Section 287's requirement of properly marking a "patented article." Power-One's quote was an excerpt of the court's commentary on the interplay between Section 287 and Section 292, which the court observed generally encourages a patentee to mark its patented articles in order to provide the public with proper notice. This also generally allows a patentee to mark its product with multiple patents and qualify that mark with the language that the product is covered by "one or more" of the patents listed.

However, Section 287's encouragement of marking is premised upon the patentee applying its mark in good faith. Section 292 ends this type of encouragement when the patentee practices this form of marking with an intent to deceive the public. *See Mass. Inst. of Tech. v. Abacus Software, Inc.*, 2004 WL 5268123, at *21 (E.D. Tex. 2004) (Craven, Mag.) ("Thus, in the balance struck by §§ 287(a) and 292, there is a clear weight on the side of marking, even if that results in a notice that includes patents that may not actually cover the vended article. Indeed, cases suggest that so long as a patentee exercises good faith in deciding to mark particular articles, such a patentee is not liable for false marking under § 292, even if it later turns out that such articles are not covered by one or more claims of the listed patent.").

The issue of whether Power-One's practice of marking its products with the "one or more" language constitutes false marking therefore turns on whether Astec can show that Power-One implemented this marking practice with the intent to deceive the public. Holding as a matter of law that Power-One's use of this marking practice is valid and proper is thus premature without providing Astec an opportunity to demonstrate bad faith. Other courts have similarly held that the key question is whether deceptive intent has been shown. *See Clontech Labs., Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) ("We see no reason to interpret the statute differently to render it a statute of strict liability for mismarking. . . . in order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were properly marked (i.e., covered by a patent). Absent such proof of lack of reasonable belief, no liability under the statute ensues."); *see also Pequignot v. Solo Cup Co.*, — F. Supp. 2d —, 2008 WL 833977, at *5-6 (E.D. Va. Mar. 24, 2008) ("The result in *Arcadia* was therefore grounded in a fact-specific analysis of the record and not, as

Solo contends, on a blanket holding that conditional statements cannot constitute false markings under § 292(a). . . . Whether marking with a conditional statement constitutes a culpable false marking depends on whether Pequignot can demonstrates [sic] by a preponderance of the evidence that Solo intended to deceive the public- *i.e.*, that Solo 'did not have a reasonable belief that the articles were ... covered by a patent' or a pending patent application.").

Resolution of this issue requires a healthy development of facts which have yet to be harvested in this case.  Moreover, in a Rule 12(b)(6) motion to dismiss, a court construes the complaint in favor of the plaintiff and takes all pleaded facts as true.  Astec's claim that Power-One marked its products with an intent to deceive the public are thus assumed as true.  Dismissal of Astec's false marking claim is therefore not appropriate at this time.  The Court reserves judgment as to whether Astec's false marking claim would be ripe for disposition on a subsequent motion for summary judgment.

Power-One also moves to dismiss Astec's false marking claim for failing to plead the claim with specificity.  *See* Fed. R. Civ. P. 9(b).  In the alternative, Power-One moves for a more definite statement.  Power-One argues that because a false marking claim requires an allegation of deceptive intent, it is similar to an averment of fraud, which must be pled with specificity.  However, Power-One provides no case authority for its proposition linking a false marking claim to an averment of fraud.  On the other hand, courts have generally interpreted the scope of Rule 9(b) as limited to allegations of fraud and mistake.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions.  Rule 9(b), for example, provides for greater particularity in all averments of fraud or mistake.  This Court, however, has declined to extend such exceptions to other contexts.").  Furthermore, assuming that

a false marking claim must be pled with particularity, Power-One seeks identification of who falsely marked the products with deceptive intent. Astec has identified in its Complaint that Power-One is the corporate entity responsible for Astec's false marking claim. Greater specificity is not necessary at this early stage of the proceedings. Accordingly, Power-One's Motion to Dismiss Astec's claim of False Marking and in the Alternative a More Definite Statement is hereby DENIED.

### IV. CONCLUSION

For the reasons stated above, Power-One's Motion to Dismiss or in the Alternative, Motion for More Definite Statement (Doc. No. 41) is hereby **DENIED** in its entirety.

**So ORDERED and SIGNED this 11th day of April, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE